The next case on the calendar is Excevarria v. Dr. Pepper. Good morning, may I please the court. Jack Fitzgerald on behalf of Appellants and with the court's permission I'd like to reserve two minutes for rebuttal. As the court is aware there's two primary issues in this case. Number one is what is a reasonable consumer interpretation of diet in the context of diet sodas and number two is whether the science is strong enough to support the claims in this case. Now in this particular case as the court knows there's three related cases against the three big soda manufacturers. In this particular case Judge Daniels Blow really rested his decision on the reasonable consumer issue really didn't talk about the science much but on the other hand the decision from the Manuel versus Pepsi case which came out a few weeks ago and Judge Calabrese was on on the panel on that case primarily found based on the science so I'll address both of these issues. Starting with the reasonable consumer Judge Daniels ruled on the record as the court is aware and at page 127 of the appendix one of the things he said is the word diet does not solely represent claims with regard to the loss of weight or the gain of weight by its use. We would argue that by saying it doesn't solely mean what we are asserting or alleging it means Judge Daniels is acknowledging that in some cases it does mean what we allege it means and if that's true and our interpretation is a plausible one then under Anderson News Judge Daniels was not at liberty to choose between those two definitions but should have found our definition was at least plausible. Well it's it's kind of hard you're saying to say what a reasonable consumer would do would read this on a 12b6. It absolutely is in most most cases say but you know whether a business practice is misleading and part of that is what a reasonable consumer would interpret is really hard to do on the pleadings you need evidence you need. But then you have the issue of what is it that is required with respect to science and that is a fascinating question because it actually says when you have something that is not misleading at the time it was originally used on the basis of the then which is this case right because it's a time that diet was first used nobody thought that it meant anything misleading. How much science do you need in order to say it becomes in misleading is it zero is it a little bit of science it causes some people to have some doubt or do you have to have at a particular moment some finding that is so clear that it does it. Now in the Pepsi case where we could not ask what the New York general business law was meant because it wasn't determinative because there was the issue of preemption we had to do the best we could and so we said we believe that you need more science than there is in this case. My question in this case is here we don't have that impediment and this is a question of New York law so I don't know whether New York would say what New York would say about this whoever New York would say we require more we require little or whatever and that's my that's my question in this case but it is I know how I would decide it because that's how I decided it the last time and I'd be perfectly willing to say that to New York but I but it is an issue of New York law. Well thank you I understand your comments and you made similar comments last time and including in the footnote in the Manuel decision. Just to make sure since I wasn't on the other panel the science this case is on all fours in terms of what the science is there's no way to distinguish Manuel I mean not saying actually yes go ahead. I do have a distinguishment to make so the and just as a reminder so the the Manuel decision said that none of the studies purports to establish a causal relationship between non-nutritive sweeteners and weight gain that is sufficiently strong. First of all for us that begs the question what what is sufficiently strong we would argue that where at where as here that you have at a minimum lots of indirect evidence lots of people raising concerns and and maybe some hedging that that's enough at the pleading stage to go to go through but here's a distinction on the facts in Manuel we were not allowed to submit an amended complaint although in the appeal we argued that if we had been permitted we would have cited some additional studies. The Manuel decision says that's not enough because those studies predated the complaint so you know we had our opportunity to put them in. In this case we did submit a first amended complaint it did have additional studies and I would argue that those additional studies are even more supportive and and the two I really would cite and have have the court read very carefully and I think if you read these is strong enough to allow us to proceed is Chia 2016 and Fowler 2016 and and Chia is cited in the first amended complaint at paragraph 53 it's appendix 155 and Fowler is cited in paragraph 51 of the first amended complaint which is you'll have a question of when something was okay when started at what point do you say that something is misleading enough to give rise to a cause of action well and whether a cause of action arises in that or whether some kind of notice has to be given to the company that they'd better stop you know it's it's it's a very I have problems suggesting that where there isn't one very clear event at a certain point a company becomes liable for doing something which they have done all along it's it's a little bit like when something is heading towards unconstitutionality I mean when well I how do you decide that I would just argue that a lawsuit is a great way to decide and submitting it to a jury is a great way to decide I mean that's that's why we have well summary judgment doubt bear I mean at at some point it does look at it from the standpoint of a company that starts out doing something which is perfectly okay and invest money on that and then some scientists somewhere starts to say hey it is different and then another scientist at at what point are you gonna say that this company has to pay class I mean I think that's a question of fact for the for the jury depending on how strong the science is and if they believe it's crossed isn't it isn't a question of law for a court to say what kind of data or what kind of point is enough and isn't that that's why I go back to saying ultimately we could decide it on the facts before us in it as a question of law in Pepsi because because we couldn't send it to the state but it is a question that New York you know New York might decide one way in California and over and I just asked a quick question I know your time is about to end but returning to the reasonable consumers understanding of the words I might agree with you that in many cases it's a difficult to do on the basis of a complaint but here diet dr. pepper is not like diet pills it's diet dr. pepper so it seems reasonable to me that you you think oh this is the lower calorie form of dr. pepper and if you if we decide on that basis we don't deal with the science well I would just argue that that the fact that it has no calories has implications for consumers and the implication has to do with body weight and just one thing I would point out on page 27 of a Peli's brief they give a definition as an adjective remember they definition is suitable for consumption with a weight reduction diet so these sodas are at least suitable for consumption with a weight weight reduction diet if it turns out that this stuff is actually not causing weight loss or cause cost weight gain or even if it's a possibility that there's a risk of it that's at least a deceptive omission and remember we have omission claims in this case as well and the complaints paragraphs 41 and 46 to 47 looking at the Chia reference in the complaint yes 53 and you mentioned another reference to another study as the material difference between this case and manuals all right that's it's one distinction correct yeah I mean the only distinction you mentioned yeah yeah I think we added some other studies but those are the two studies that I think are the strongest that we added so in looking at 53 it says another study found that using different models and approaches to account for initial indication we consistently found low calorie sweetener use associated with weight gain and expanding waistline but how does that add really in a material way how is that materially different um because Chia talks about all the things they did to control for reverse causality on pages 70 it's it's really a stronger study because of the of the controlling for a reverse causality and it talks about causality and Fowler talks about the plausible mechanisms have having been identified in the in the consistency between different types of data like animal epidemiological clinical etc and I'm way over my time so I'll step down thank you morning may it please the court my name is Evan Young from Baker bots and I represent the defendant's a police both of the issues that we've been discussing are independent grounds for affirming the judgment below and maybe I'll start briefly with the understanding the reasonable consumer could have in the question of New York law about that and we've cited the Oswego case and that has been applied by this court many times that it comes straight from the New York Court of Appeals saying that in explicating the legislative objective behind section 349 were mindful of the potential for a tidal wave which is why they say we adopted the objective standard a reasonable consumer acting reasonably under the circumstances which they then say may be decided as a matter of law or a fact as the case may allow in this case there's no possible basis I think that any reasonable consumer under any reasonable standard could say that diet dr. pepper means anything other than dr. pepper that has a reduced calorie count at 12 b6 or its summary judgment at 12 b6 this is something about plausibility and when every single dictionary including the dictionaries that they cited to the district court say list diet soda as an example this is the one they cited for example from the Cambridge dictionary of food or drink containing much less sugar than usual and often sweetened artificially or containing less fat than usual colon diet soda every dictionary uses diet soda as the exemplar for what diet means when used in that form the FDA regulations also are consistent with that saying that when a word like diet or low-calorie precedes the name of the food it's modifying the food not something else and so fundamental to the claim about consumer confusion is this notion that's repeated over and over again that it's not as safe as water well what we're talking about is not dr. pepper flavored water we're talking about diet dr. pepper again the New York Court of Appeals case on that it's called Oswego versus Oswego Labor's local 214 pension fund versus Marine Midland Bank we cite it in several other New York case on page 18 of our opening brief and that's where Chief Judge Kaye articulated this objective principle that says in New York under this statute as a matter of law it's possible to resolve these claims because it's an objective standard and the submission that we make is objectively it's impossible and she says that it is capable of deciding at the pleading stage or at the summary judgment stage well it says as a matter of law or fact as individual case requires so as a law could be a pleading stage well a matter of law is a different thing from saying something that is plausible generally a matter of law in fact if it is objective sounds to me as if it may or may not be plausible but then when we get all the information that we get before summary judgment it is possible for a court to say rather than say that since some individual does this and some individual like does that it should go to a jury well I don't know I want to read I always follow Judge Kaye a wise practice and she started this off by saying that the reason for allowing it to be decided as a matter of law and as an objective question is to satisfy the New York legislature's desire to avoid a title weight of litigation which would not be stopped by saying we're gonna open it up to discovery we might have a jury decide these questions well so the reference to title wave you say it makes it plausible that she was contemplating though she may not have said explicitly that it could be resolved at the pleading stage well yes I think that the also the reference to as a matter of law makes that plausible but of course it's a federal pleading standard we're talking about New York substantive law in a federal pleading standard which if you take every single dictionary makes it these cases the federal pleading standard is not the harder nine but the usual eight because we're applying New York law under the federal pleading standard I think leaves no possibility that Judge Daniels was wrong no reasonable consumer as a matter of law at the pleading stage could plausibly mean that diet dr. pepper is suggesting that what you're actually getting is dr. pepper flavored water a second point that I just make on this before turning to the science is that the word diet also implausibly means that it could not possibly have any effect on weight gain I mean go in order three of the the Weight Watchers meals that are marketed for diets to facilitate diets and if you three of those you may as well have a cheeseburger right you can have a weight gain from things that satisfy diets to diet is not too fast to diet is not to starve and the fact that this has zero calories doesn't mean as has been conceded that relative to dr. pepper this doesn't satisfy everything that even plaintiffs demand so from every perspective I think that there's no plausible allegation 12b6 standard that you could get to discovery and summary judgment much less a jury on this but even if you don't agree with all of all of those points and I wish the court would would adopt them it's this this these cases have proliferated even if you didn't on the science there is no real distinction with Manuel every single study including the ones that were mentioned today was at least presented to this court in the argument like the survey difference between this case and Manuel is that in Manuel we had to decide what is enough science as a we couldn't certify and we couldn't certify because it wasn't determinative and it wasn't determinative because of a preemption issue and to avoid deciding the preemption issue which is a terribly difficult issue certification was not appropriate in this case for whatever reason the preemption issue is out of it and so it is determinative so that in this case unlike Manuel if the issue is what does that law say I'm perfectly willing to say as I joined in Manuel here's how I decided but you New York Court of Appeals may want to decide it may want to take it may want to decide it differently may not that is a certification reason a saying here's how we decided if you don't like it you take well I took Manuel a little bit differently and I was not a judge on the panel so I acknowledge that yes that's that's one you know that would be an implausible allegation I think that that Manuel said we don't have to decide the the preemption issue because we're relying on the science and we don't need to certify the question about the New York standards as I think quite clear that says we cannot certify because it is not determinative yes indeed and I think that there are two reasons that why it would not be determinative there there can be multiple reasons why and I would I certainly agree it's not determinative but I think that what we find is that under any standard there's no way that you can plausibly allege causation when you have not a single study that remotely says that Chia doesn't say it Fowler doesn't say it every single one of those cases are presented and it's not just a New York substantive law question although if it were I think that there could be no doubt but it is a federal pleading standard that when you say this causes weight gain you have to have at least something that can plausibly allege it as opposed to cite a variety of things with some correlation all of the scientists were very careful to say things like we cannot exclude the possibility that other things caused this a significant advantage in having the New York Court of Appeals if it wishes to say something about how a company that does something that is okay when it starts does not stuntly become liable when some a little bit more a little bit more a little bit more science comes in I mean wouldn't that be a holding that would be darn useful it would be a fascinating question and in a case in which that would indeed be determinative because it would be plausible then I think that there may be a time for the New York Court of Appeals to comment on that well if you're right on the first issue then of course that's it that decides and I think if we're also right on the question of whether or not there is any science that plausibly asserts causation even today you couldn't possibly ask the New York Court of Appeals to tell us about a hypothetical circumstance in which the science plausibly alleges something that has changed and for either of those two reasons this is this is why I think that it's not determinative here as in Manuel the New York Court of Appeals should have the chance to state its law in a way that the statement will really make a difference in a case where the allegations would satisfy implicate just helping me understand the where we are with courts have been a number of district court opinions but no circuit court has weighed in on this problem other than in the summary order only in the Manuel summary order that's correct the others are all pending all the district judges including others like Judge Oreck in the Northern District California that had all of the same science didn't seem to regard it as a complicated question about whether there was a plausible allegation of causation regardless of what the state law might say about the question the Dean Calabresi is raising and I acknowledge it would be well worthy of some articles in the Yale Law Journal and it would be an important question in a future case for all of those unless there are further questions we'll submit thank you your honor just briefly I know I used a lot of my time but just on the I want to read a quote from one study this is Hoang H H U A N G 2017 he talks about a study Suez did in 2014 so he says a recent article by Suez et al demonstrated that artificial sweeteners induced glucose intolerance by altering gut microbiota in mice and that the induced glucose intolerance was abated by treatment with antibiotics additionally they demonstrated that in a dysbiosis and glucose intolerance was transferable by fecal transplant transplants to germ-free mice suggesting a causal relationship there's also several studies that we cite that talk about reverse causation cannot account for all the effect we're seeing in the epidemiological evidence etc and that these these scientists have been trying to control all these confounding factors for a long time now I think if you look at this body of science it is a lot characterized me ask this question suppose we decide against you because we accept the notion that today there is no science that does that okay right and then in six months some professor and we'll put him at Harvard or her at Harvard so if we know it's something that's reliable writes an article that says doing this actually increases weight or does not diminish weight you can sue again can't you well you know what I mean I'm just asking if we go on that ground because that is what it means and don't deal with the issue of what happens if we have something that is okay at time one and doesn't what is necessary for it to be a time to we simply say okay wait for the next article no what kind of a judgment is that yeah I mean I've thought of that possibility myself I think it would be worse you really hard that's how you make your money but I think it would be really hard to come in after after several decisions with the science in this way saying the science is well it's harder to show that the next article is really a good one but I'm supposing that a very senior Harvard professor has written that yeah thank you thank you both will take the matter under advisement well argued